UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| DANIEL CISNEROS and ALBERT ESTRADA on behalf of themselves and others similarly situated, | Case No. 19-cv-500-GBW-GJF |
| Plaintiffs, | **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| EP WRAP-IT INSULATION, LLC; CYNTHIA LUCERO; AND ABRAM LUCERO, | |
| Defendants. | |

## I.       INTRODUCTION

Plaintiffs Daniel Cisneros and Alberto Estrada ("Named Plaintiffs") respectfully request that this Court preliminarily approve a proposed class action settlement set forth in the Settlement Agreement ("Agreement") with Defendant EP Wrap-It Insulation, LLC ("Defendant"). The Agreement is provided herewith attached to the Declaration of Anne Yen, Exhibit A. Under the Agreement, Defendant has agreed to pay the settlement sum of $160,000.00 for a release of claims by Named Plaintiffs, the additional Plaintiffs who opted in to the action under the opt-in provisions of the Fair Labor Standards Act ("FLSA"), and the Settlement Class Members as defined in the Agreement.

Plaintiffs request that this Court grant preliminary approval of the Agreement because: (1) the proposed settlement class meets all the requirements for class certification for settlement purposes under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure Rule 23 and the FLSA; (2) Plaintiffs and

proposed Class Counsel will adequately represent the class; (3) the Agreement bears all requisite indicia of fairness, reasonableness, and adequacy as required by Rule 23(e)(2); (4) the proposed notice procedure and Settlement terms comport with all Rule 23 and due process requirements; and (5) Plaintiffs' requests for attorney fees and costs, and incentive payments for the named Plaintiffs, as outlined in the Agreement but subject to the Court's approval at the final approval hearing, are reasonable and in line with established authority and precedent in similar cases.  Thus, this Court should grant Plaintiffs' motion in its entirety, direct that notice be given to all class members, and schedule a final approval hearing.

## II.    <u>SUMMARY OF THE LITIGATION</u>

On May 31, 2019, Named Plaintiffs filed suit against Defendants EP Wrap-It Insulation, LLC, et. al ("EP Wrap-It"), alleging violations of the Fair Labor Standards Act (FLSA) and related state-law claims.  Plaintiffs allege that they and other insulators employed with EP Wrap-It were subject to EP Wrap-It's practice of failing or refusing to pay them for time they worked before and after they were at job sites – reporting to the EP Wrap-It shop, loading trucks, traveling to the sites, and returning to the shop and unloading afterwards.  (Amended Complaint, Doc. 10, ¶33.)  In addition, Plaintiffs allege that Defendants failed to pay them, and similarly situated employees, overtime for all overtime hours worked at the correct rates under the FLSA.  (*Id.* at ¶35.)  Plaintiffs allege pendent related claims under state law, including failure to pay minimum wages and correct overtime wages under New Mexico's Minimum Wage Act, 50-4-20 NMSA, *et seq.*("NMMWA") and state prevailing wage laws, both as a collective action under the FLSA and as a putative Rule 23 class action.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Defendants deny the allegations asserted in the Action, deny that class treatment is appropriate, and deny liability to the Plaintiffs and putative class members.

On October 31, 2019, five additional Plaintiffs opted in to join the action (Doc. No. 27).  After conditional certification to pursue the FLSA claim through the procedure of a collective action under the FLSA, Plaintiffs sent notice of the claim to the last known addresses of all hourly non-managerial employees of Defendant during the period of May 31, 2016 to April 1, 2020.  Two additional Plaintiffs opted in to join in the action.  (Doc. Nos. 51-53.)  Each of the seven Plaintiffs who opted in under the FLSA are, like the original Named Plaintiffs, former employees of Defendant who left the company prior to 2019.

The parties participated in a settlement conference before Magistrate Judge Gregory Fouratt on August 24, 2020 and subsequent negotiations with the assistance of the settlement conference judge.  Prior to the settlement conference, the Parties engaged in substantial written discovery; and Defendants provided Plaintiffs' Counsel with wage and hour data for Plaintiffs during their entire employment with Defendants and for all putative class members for the period of May 31, 2016 to September 22, 2019 ("Class Period"), which Class Counsel and Defendant's Counsel reviewed and analyzed prior to the settlement conference.  (Yen Decl., ¶ 5.)  Defendants also provided evidence of a risk that, in the event of a trial and judgment in favor of Plaintiffs and the putative Rule 23 class, Defendants would seek dissolution of the business and bankruptcy relief, jeopardizing the ability of Plaintiffs and the putative class to collect a recovery.  (Yen Decl. ¶ 9.)

Named Plaintiffs contend common issues arise in this Action due to Defendant's pre-shift and post-shift practice of requiring the proposed class to perform off-the-clock work.  However, despite Named Plaintiffs' allegations regarding these off-the-clock practices, Named Plaintiffs acknowledge the

3

significant risks involved in obtaining or maintaining class action status in this matter, including, but not limited to, a risk that Defendants contend not all the putative class members were in fact "insulators" for the purpose of the prevailing wage claims, and a risk that Defendants contend that not all members of the putative class are similarly-situated.  Plaintiffs are also mindful of the affirmative defenses Defendant has raised since the outset of this action.  While Plaintiffs continue to dispute the validity of these affirmative defenses, the fact that this case, short of settlement, would have involved considerable motion practice to deal with these defenses cannot be ignored.  Moreover, Plaintiffs consider the serious risk that, even if Plaintiffs prevail on Rule 23 class certification and go on to prevail at trial, Plaintiffs and the putative class members might not be able to collect such a recovery if Defendants seek bankruptcy relief.  Taking all these considerations into account, Plaintiffs' counsel believe the settlement is fair and reasonable. (Yen Decl., ¶¶ 8-14.)

The settlement is the result of an informed and detailed analysis of the risks facing both parties in litigating this case, including, but not limited to, careful consideration of the legal and factual obstacles to Plaintiffs' prospects of obtaining class certification and on the merits, and Defendant's defenses, as well as Defendant's potential exposure and the additional costs of litigating the Action.

### III.    SUMMARY OF SETTLEMENT TERMS

In the Agreement, Defendant EP Wrap-It Insulation, LLC agrees to pay a total of $160,000.00 to settle the claims up to the date of signing the Agreement that were asserted in the Action and all other claims emanating from the same facts alleged in the action, with respect to Plaintiffs and Settlement Class members employed by Defendant in the Class Period.  The Named Plaintiffs, all opt-in

Plaintiffs, and all Settlement Class members who are provided notice and who do not opt out of the settlement are bound by the Agreement. The release of those claims takes effect when Defendant has completely paid all installments of the settlement. (See sections 1(l), 1(n), 2, 3, and 5(a) of the Agreement.)

To meet the needs of due process, notice will be sent to the Settlement Class members by mail. (Agreement, section 9.) The Notice will include: information regarding the nature of the lawsuit; a summary of the substance of the settlement; the settlement class definition; the procedure and time period to submit a claim or objection to the settlement; the date set for the Final Approval hearing; and the formula to be used for the Participating Class Members' settlement payments. (*Id.* at subd. a.) The parties have agreed upon the proposed form of Notice provided in Exhibit B to the Yen Declaration filed herewith. Defendants have agreed to provide Plaintiffs' counsel with the names, last known addresses, last known telephone numbers, and Social Security Numbers of Settlement Class Members so that Plaintiffs' counsel can carry out the notice provisions of the Agreement. (*Id.* at subd. b.) The Settlement Class members will also be provided a Claim Form. The Settlement Class members will then have 60 days to return Claim Forms. (*Id.* at subd. c.) Those who timely do so will receive shares of the settlement which will be calculated as set forth in the Agreement. (*Id.* at section 5(f).)

The settlement funds are to be distributed as set forth in section 5 of the Agreement, subject to the Court's approval: Plaintiffs' counsel will apply to the Court for an award of reasonable attorneys' fees in the amount of one-third (1/3) of the Gross Settlement Amount, which is $53,333.33, and Defendants agree that they shall not oppose any award of fees up to that total amount; Plaintiffs' counsel will apply to the Court for an award of recoverable costs incurred in the action, including reasonable costs to administer the class notice and claims procedure; to the extent that Defendants will incur reasonably necessary costs in preparing the

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

settlement checks, Defendants will apply for such costs to be deducted from the Gross Settlement Amount, and Plaintiffs shall not oppose subject to the maximum charge back limitations set forth in section 6(b); Plaintiffs' counsel will apply to the Court for approval of reasonable enhancement payments in the amount of $2,500 each to Named Plaintiffs Daniel Cisneros and Alberto Estrada, who actively assisted Class Counsel in prosecuting and settling this case for the benefit of the Settlement Class; and the Net Settlement Amount remaining shall be paid entirely to Settlement Class members who timely return signed claim forms ("Participating Class Members")[1].  Each Participating Class Member's share shall be determined by dividing the member's weeks worked during the Class Period into the number of man-work-weeks worked by all Participating Class Members during the Class Period and applying the resulting fraction to the Net Settlement Amount.  (Agreement sections 5(a) through (f).)

Defendants have agreed to pay the settlement in three installments after final approval, as set forth in the timeline described in section 6(a) of the Agreement.

## IV.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. OVERVIEW OF CLASS ACTION SETTLEMENT APPROVAL PROCESS.

The law favors settlement, particularly in class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  In reviewing a class action settlement, a court undertakes two fundamental inquiries.  "First, the district court must assess whether a class exists."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In other words, the court must

---

[1] Plaintiffs shall be included as Participating Class Members without the need to return claim forms, but shall be subject to all other conditions and requirements of Settlement Class Members.

determine that the lawsuit qualifies as a class action under Rule 23 to begin with. Second, the court must determine whether the settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952.

When the parties reach a settlement agreement before a trial class is formally certified, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

Thus, judicial review of a class action settlement entails a two-step process. "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)[2] (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)). At the second stage, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314.

## B. PLAINTIFFS' CLAIMS MERIT CLASS ACTION TREATMENT FOR SETTLEMENT PURPOSES.

Under the first step of the preliminary settlement approval analysis, the Court is obliged to make an initial determination that the Settlement Class meets the class certification requirements of Rule 23. This requires that all four Rule 23(a) prerequisites and at least one of the three Rule 23(b) requirements are met. In determining the propriety of class certification, a court may not delve into the underlying merits. The fundamental question "is not whether . . . plaintiff [has]

---

[2] Overruled on other grounds not relevant here in *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

Under these governing standards, this action meets the requirements for certification under Rules 23(a) and (b)(3) for settlement purposes for the reasons discussed below.[3]

### i. <u>This Case Satisfies All Four Rule 23(a) Prerequisites</u>

The prerequisites of Rule 23(a) are as follows, and are explained in more detail in turn below: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representatives; and (5) adequacy of counsel. Fed. R. Civ. P. 23(a)(1)–(4).

### 1. **Numerosity**

Under Rule 23(a)(1), a class may be maintained where the "class is so numerous that joinder of all members is impracticable." In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News* 231 F.R.D. 602, 606 (C.D. Cal. 2005).

Here, there are 51 Settlement Class members, which satisfies the numerosity requirement of Rule 23(a). *See, e.g., Jordan v. Los Angeles County,* 669 F.2d 1311, 1319 (9th Cir. 1982), vac. on other grounds, 459 U.S. 810 (1982) (classes of 39, 64 and 71 persons satisfied numerosity requirement and trial court erred in denying class certification for lack of numerosity); *see also, Ikonin v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) ("As a general rule . . . classes of 40 or more are numerous enough"); *Romero v. Producers Daily Foods,*

---

[3] Defendant disputes that the Plaintiffs could have successfully obtained class certification in this case, but Defendant does not oppose certification for settlement purposes only, as is typical when the parties reach a settlement before any certification determinations have been made.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Inc.* 235 F.R.D. 474, 485 (E.D. Cal. 2006) ("A class with over forty members is presumed to satisfy the numerosity prerequisite.").

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Where a class is united by a common interest in determining whether defendant's allegedly broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Here, Plaintiffs allege that proposed class members share common questions of law and fact which include, but are not limited to, the following: Did Defendant maintain a policy and practice of requiring class members to work off the clock before and/or after they were at the job sites, e.g., reporting to Defendant's shop to assist in loading the trucks, traveling to the job sites, traveling from the job sites back to Defendant's shop, and assisting with unloading? Did Defendant maintain a policy and practice of failing to pay class members for time before and/or after they were at the job sites? Notwithstanding that Defendant disputes the existence of a common policy or practice, since the Court may consider the allegations in the complaint to be true for purposes of this analysis, there is a sufficiently pleaded common issue in this case pertaining to Defendant's liability to the Class to satisfy the requirements of Rule 23(a)(2) for settlement purposes.

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiff or plaintiffs have claims "typical of the claims . . . of the class." Representative claims are typical "[i]f they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 120. In other words, named plaintiffs need not be "identically situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

insure a vigorous and full presentation of all claims for relief." *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*

Here, Named Plaintiffs are members of the proposed Settlement Class and allege the same injuries allegedly suffered by other proposed class members. Named Plaintiffs contend that this lawsuit is based on conduct that was not unique to them, but was a uniform practice common to all class members. Specifically, Named Plaintiffs allege a uniform practice based on conduct that applied to all non-exempt installation workers employed by Defendant during the Class Period. Thus, Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3) to warrant certification for purposes of settlement. *See, e.g., In re Activision*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that such differences are insufficient to defeat class certification).

### 4. Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiffs and their counsel "have any conflicts of interest with other class members," and whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. *See also, Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (class representatives adequate where they were "interested and involved in obtaining

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

relief" despite defendants' claim that representatives committed fraud).

Here, there are no conflicts of interest between Named Plaintiffs and absent class members. Nor are there any conflicts with Plaintiffs' counsel. In addition, Plaintiffs' counsel have substantial class action experience and can adequately represent the class. (Yen Decl. at ¶¶ 18-22) *See, Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### a. <u>This Case Also Satisfies the Requirements of Rule 23(b)(3)</u>

In addition to Rule 23(a) prerequisites, class certification requires the moving party to show that one or more of the requirements of Rule 23(b) are met. Here, as explained below, the proposed settlement class meets the requirements of Rule 23(b)(3) in that the proposed class members share common questions that predominate over any questions unique to individual proposed class members, and class action treatment is the superior means of resolving this dispute.

### 1. Predominance of Common Questions

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class

11

certification.  *See Blackie*, 524 F.2d at 905.

The predominance requirement is satisfied here because Plaintiffs contend that Defendant's liability hinges on the common issue regarding the effect of any alleged pre-job site and post-job site practice requiring off-the-clock work.  Since Defendant's liability turns on the resolution of a single common question, the answer to which, Plaintiffs contend, will apply equally to all class members, the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.

## 2.  Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Culinary/Bartenders Trust*, 244 F.3d at 1163; *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Here, since Plaintiffs allege that Defendant violated the law with respect to 51 employees, there are no economical alternatives to a class action.  The only way for proposed class members to vindicate all their rights in this case would be through individual lawsuits.  But, since there are 51 proposed class members, individual litigation would be an inefficient method.  *See Lerwill v. Inflight Motion Pictures Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (in certifying a class of employees seeking overtime wages, the court held that "innumerous individual actions would be expensive and time consuming").

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense in separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, the remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification for purposes of settlement.

First, the proposed class members have no particular interest in individually controlling the prosecution of separate actions. Any proposed class member who wants to pursue a claim for an amount greater than a settlement share may request exclusion from the Settlement.

Second, there is no competing litigation regarding the statutory violations at issue. There is also no non-class litigation regarding the claims in this case and it is desirable to concentrate the issues in this forum because Plaintiffs and the proposed class members all worked for Defendant in El Paso and at job sites in El Paso and New Mexico.

Finally, "[w]ith the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Ia.,* No. CIVA96-296-CIV-T-17B, 1998 WL 133741, at *19 (M.D. Fla. Jan. 27, 1998); *Strube v. Amer. Equity Inv. Life Ins. Co,.* 226 F.R.D. 688, 697 (M.D. Fla. 2005) (final two Rule 23(b)(3) factors are "conceptually irrelevant in the context of a

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

settlement").

Thus, Plaintiffs contend that a class action settlement provides the most efficient mechanism for resolving the claims of the members of the proposed class in this case.

## B. THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, AS IT IS A FAIR, ADEQUATE, AND REASONABLE COMPROMISE OF DISPUTED WAGE AND HOUR CLAIMS.

No single criterion determines whether a class or collective action settlement is "fair and reasonable" and meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See Staton, supra*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Id*. at 625 (internal citations omitted).

Where a settlement results from arm's length negotiations after "relevant discovery," there is "a presumption that the agreement is fair."  *Linney v. Cellular Alaska P'Ship,* No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. 1997).  So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases, it need not be exhaustive.  *See, e.g., In re Immune Response Sec. Litig.,* 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

of the strengths and weaknesses of their cases).

The ultimate touchstone is whether "class counsel adequately pursued the interests of the class as a whole." *Staton, supra*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is tailored to meet that narrow objective. Indeed, Rule 23(e) review "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Thus, the Ninth Circuit will not reverse a district court's approval of a settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Staton*, 327 F.3d at 961.

### 1. <u>The Settlement is Fair and Reasonable in Light of the Parties' Respective Legal Positions</u>

A settlement is not judged against what might have been recovered had a plaintiff prevailed at trial, nor does the settlement have to provide anywhere close to 100 percent of the damages sought to be fair and reasonable. *See, e.g., Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224, 246, 250 (2001)[4] ("Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.")

In addition to vigorously disputing the merits of Plaintiffs' claims, Defendant would also vigorously dispute any request for class certification. (Yen Decl., ¶ 8.) Defendant supports certification for settlement purposes only and contends that Plaintiffs could not have obtained certification of any class, and

---

[4] Disapproved on other grounds not relevant here in *Hernandez v. Restoration Hardware, Inc.*, 4 Cal.5th 260 (2018).

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

presented detailed evidence, authority, and arguments supporting their opposition to certification and their various defenses on the merits. (*Id.*)  In contrast, Plaintiffs believe that this case is suitable for class certification in that alleged company-wide practices could be established using representative testimony and declarations from putative class members. (Yen Decl., ¶ 11.)  However, while Plaintiffs assert that this is a suitable case for certification, Plaintiffs realize that there is always a significant risk associated with class certification proceedings, and this matter is not an exception. (*Id.*)

In light of the uncertainties of protracted litigation, including the significant risks posed by any disputed certification and merits proceedings, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members. The settlement amount is, of course, a compromise figure.  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant.  Moreover, Defendants presented evidence of a significant risk that even if Plaintiffs won class certification and trial after protracted and expensive litigation, Plaintiffs and the putative class might never realize the benefits of such victory due to the possibility that Defendants would seek bankruptcy relief. (*Id.* at ¶¶ 9, 13.)

As such, this outcome is in line with a carefully constructed estimate of the current fair value of the case that must factor in the substantial risks facing Plaintiffs and the proposed class if litigation continues.

## 2.  **The Settlement**

The parties reached a non-collusive settlement after discovery and a lengthy mediation session before the experienced and highly regarded settlement conference Magistrate Judge Gregory Fouratt.  As discussed below, the Settlement falls well within the range of reasonable outcomes and merits approval under Rule 23(e).

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### a. Gross Settlement Amount

The $160,000 settlement achieved by Plaintiffs represents a substantial recovery for approximately 51 class members in the face of substantial litigation risks. Based on the detailed payroll information provided by Defendant and based on the testimony of the Named Plaintiffs and several opt-in Plaintiffs, Plaintiffs' counsel estimate that Defendant's maximum potential liability for the putative Rule 23 class claims includes approximately $125,000 for off-the-clock wages, but Defendants vigorously dispute that they have failed to pay for off-the-clock time. (Yen Decl. ¶ 23). The value of the claims for Defendant's prevailing wage violations is subject to additional risk factors, due to Defendant's contention that many employees were not working as insulation installers (such that, according to Defendant, it was not required to pay those workers the higher rates for insulation installers, as opposed to general laborers). Absent settlement, if Plaintiffs surmount that hurdle on a motion for class certification and go on to prevail on a class-wide basis on the claim, Plaintiffs' counsel believe Defendant is potentially liable for $48,000 for New Mexico prevailing wage violations. Defendant's possible liability for Texas prevailing wage claims is more difficult to quantify and subject to different potential defenses under Texas state law, so that Defendant's liability to the putative class for Texas prevailing wage claims could have ranged anywhere from $0 to about $222,000. (Yen Decl., ¶ 24). In addition to disputes regarding the merits and the prospects of obtaining class certification, the parties also vigorously dispute the availability and extent of any potential liquidated damages and penalties, on legal and factual grounds, many of which are largely left to the discretion of the Court. Plaintiffs contend that they might also be entitled to additional amounts in the form of liquidated damages, various penalties, and additional interest on those amounts, such that the total estimated exposure may be higher than the unpaid wages alone. However, the uncertainty accompanying

continued litigation, coupled with the analysis of Defendant's potential exposure and Defendant's defenses to certification and on the merits, and the risk that Defendants may also seek bankruptcy relief, lead Plaintiffs' counsel to reasonably conclude that a class-based settlement is in the proposed class's best interests. (Yen Decl. at ¶ 25).

Given the relatively small number of proposed class members - approximately 51 individuals - the individual settlement payments per class member will confer a substantial and meaningful benefit to the proposed class. Plaintiffs' counsel have reasonably concluded that the benefits of settlement and the risks of continued litigation outweigh the much more uncertain prospect of both winning and actually collecting a full recovery. (*Id.*)

### b. <u>Attorney's Fees And Costs</u>

The compensation sought for Plaintiffs' counsel is also fair and reasonable. At the time Plaintiffs file a motion for final approval, Plaintiffs will seek reimbursement of up to one-third, or $53,333.33 to cover all work performed and all fees incurred to date and to be incurred in connection with the approval by the Court of this Settlement, the administration of the Settlement, and obtaining final approval of this Settlement and entry of judgment. This amount actually falls short of the lodestar amount of professional hours multiplied by the reasonable market rates for complex employment litigation counsel. (Yen Decl. ¶ 26.) Attorneys' fees in an amount up to one third of the gross settlement amount comports with the benchmark rate set by the Ninth Circuit for common fund cases and falls well within the range of "reasonable" attorney's fees that are commonly awarded. *See, e.g.*, *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) (rate of 33.3%); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (rate of 33.3%); *Singer v. Becton Dickinson and Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (noting awards in

class action cases where fees ranged from 30.3% to 40%).

### c. Incentive Payment

Incentive payments serve to reward named plaintiffs for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation. "Courts routinely approve incentive rewards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca Cola Co.*, 200 F.R.D. 685, 694 (N.D. GA. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provide to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, the two Named Plaintiffs seek an incentive award of $2,500 each. This amount is justified based on the size of the gross settlement amount and the amount of time devoted by Named Plaintiffs to this case, which included cooperating with Plaintiffs' counsel in investigating the claims, making initial disclosures, providing declarations in support of the motion for conditional certification of the FLSA collective action, responding to discovery, and attending and assisting with the settlement conference before Magistrate Judge Fouratt. (Yen Dec1., ¶ 27). Moreover, the amount of incentive payment sought by Named Plaintiffs in this case is comparable to the amount of incentive payments awarded to named plaintiffs in other class action cases.

### 3. The Class Notice

Rule 23(c)(2)(B) provides that, in any class action case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the circumstances.  In this regard, Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Similarly, "[t]he FLSA requires the court to provide potential plaintiffs 'accurate and timely notice of the pendency of the collective action, so they can make informed decisions about whether to participate.'"  *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 467 (N.D. Cal. 2004) (citing *Hoffman-La Roche v. Sperling* 493 U.S. 165, 170 (1989)).

Here, Notice of the Settlement will be provided to the proposed Settlement Class Members, and the Settlement Class Members may submit objections to the Settlement and/or requests for exclusion from the Settlement by using the following procedures (set forth in section 9 of the Agreement):

- Within fourteen (14) days after execution of the Agreement, Defense Counsel will provide the list of names, last known addresses, last known telephone numbers, and Social Security Numbers of Settlement Class Members.

- Within thirty (30) days of Preliminary Approval of the settlement, Plaintiffs' counsel shall mail the Notice Packet to the Settlement Class Members via first-class regular U.S. mail.  Prior to mailing, Plaintiffs' counsel will perform a search on Westlaw to update and correct for any known or identifiable address changes.  If a new address is obtained by way of a returned Notice Packet, then Plaintiffs' counsel shall promptly forward the original Notice Packet to the updated address via first-class regular U.S. mail indicating on the original Notice Packet the date of such re-mailing.  Where a Notice Packet is

20

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

returned as undeliverable, without a forwarding address, Plaintiffs'
counsel or designee will perform a computer/SSN and "skip trace"
search to obtain an updated address.  The Parties agree to cooperate to
locate a more recent address for Settlement Class Members, where
necessary.

- Settlement Class Members will have sixty (60) days from the mailing
of the Notice Packet to submit their claims.

- After the time period to return claim forms has expired, Plaintiffs'
counsel shall forward a copy of the claim forms of Participating Class
Members to Defendants' counsel and provide a calculation of *pro rata*
shares as set forth in section 5(f) of the Agreement.

- Upon completion of administration of the Notice and Claims
procedure, Plaintiffs' counsel will provide written certification of such
completion to the Court and Defendants' counsel.

Moreover, Rule 23(c)(2)(B) sets forth requirements regarding the content of
the notice.  The notice must concisely and clearly state in plain, easily understood
language: (1) the nature of the action; (2) the definition of the proposed settlement
class to be certified; (3) the claims, issues, or defenses; (4) that a class member
may enter an appearance through counsel; (5) that the court will exclude from the
class any member who requests exclusion, stating when and how members may
elect to be excluded; and (6) the binding effect of a class judgment on class
members under Rule 23(c)(3).  Here, the proposed notice procedure and related
forms meet all these requirements.  (*See*, Yen Decl. Exhibit B, Proposed Class
Notice).  Thus, this Court should direct that notice be given to proposed class
members in the manner proposed by the parties in accord with the Agreement.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

### C.    THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The last step in the settlement approval process is the fairness hearing, where the court makes a final determination about the propriety of settlement.  In accordance with the timetables set forth in the Settlement for giving notice to class members and submitting claims, objections or requests for exclusion, Plaintiffs request that the fairness hearing in this case be scheduled on a date approximately 180 days after preliminary approval.

### V.    CONCLUSION

Plaintiffs obtained a Settlement that provides 51 class members substantial value on vigorously contested claims, which, absent the settlement, may be unsuccessful in obtaining certification and/or may fail on the merits.  Since the Settlement is fair, reasonable and adequate in all respects, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for preliminary approval of the Settlement in its entirety; order notice to proceed to the Settlement Class Members, and schedule a final fairness hearing approximately 180 days after preliminary approval.

Respectfully submitted,

Dated:  March 22, 2021

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By:  _____
ANNE I. YEN

Attorneys for Plaintiffs
*Pro Hac Vice*
courtnotices@unioncounsel.net

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of March 2021, I filed the foregoing document(s) using the court's CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Electronic Filing of:

- **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

JEFFREY T. LUCKY
DANIEL H. HERNANDEZ
RAY, McCHRISTIAN & JEANS, P.C.
A Professional Corporation
5822 Cromo Drive
El Paso, Texas 79912
Phone: (915) 832-7200
Fax: (915) 832-7333 Fax
Email: jlucky@rmjfirm.com
dhernandez@rmjfirm.com

(Attorneys for Defendants EP WRAP-IT INSULATION, LLC, CYNTHIA LUCERO and ABRAM LUCERO)

By*: /s/ Laurie Gondreau*
LAURIE GONDREAU

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**