# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DANIEL CISNEROS, *et al.*,

     Plaintiffs,

v.                                             Civ. No. 19-500 GBW/GJF

EP WRAP-IT INSULATION, LLC, *et al.*,

     Defendants.

## ORDER GRANTING PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

THIS MATTER comes before the Court on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. *Doc. 79.* The parties have entered into a Settlement Agreement and Release ("Settlement Agreement") (*doc. 81-1*), which they ask this Court to approve. Having reviewed the Settlement Agreement and being fully advised in its premises and the applicable law, the Court will GRANT the motion and preliminary approve the parties' settlement. The Court will hold a fairness hearing on **January 12, 2022** to hear any objections and determine whether to provide final approval of the settlement.

## I.    BACKGROUND

Plaintiffs filed this suit on May 31, 2019, bringing collective and class action claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19 *et seq.*

*Doc. 1.* Plaintiffs, on behalf of themselves and other similarly situated employees, allege that Defendants failed to pay wages at prevailing wage rates applicable under the New Mexico Public Works Minimum Wage Act, N.M. Stat. Ann. § 13-4-10 *et seq.*, failed to pay wages for compensable time spent loading and unloading trucks and traveling to and from worksites, and failed to pay overtime compensation for hours worked over forty in a workweek. *Id.* at ¶¶ 12, 17, 30–43.

On March 24, 2020, the Court filed an order granting conditional certification of Plaintiffs' collection action under the FLSA. *Doc. 49.* The Court directed Defendants to supply names and last known mailing addresses for "all hourly non-management current and former employees during the period of May 31, 2016 to April 1, 2020, who worked in the field (that is, at job sites)." *Id.* at 2. The Court directed Plaintiffs to send notices to these individuals within ten days of receiving their names and addresses. *Id.* The notice informed potential plaintiffs of the pendency of this suit. *Doc. 36-19.* It explained that this suit alleges violations of the FLSA and state wage law, specifically the failure to pay wages for all time worked and the failure to pay overtime rates for overtime hours. *Id.* at 2. It provided instructions for consenting to join the suit and explained the potential consequences of joining or not joining the suit. *Id.* at 3–4. It explained that an individual who chooses not to join the suit may retain his own counsel and would not be affected either favorably or unfavorably by the suit but that the statute of limitations would continue to run against him. *Id.* at 4.

From August 24, 2020 to October 21, 2020, the parties engaged in settlement discussions before the Honorable Magistrate Judge Fouratt, culminating in a settlement agreement in principle with a written agreement to be jointly prepared. *Docs. 70, 71, 72.* From November 30, 2020 to February 18, 2021, counsel engaged in several conferences and exchanged multiple drafts of the Settlement Agreement. *Doc. 77; see doc. 81-1.* The final Settlement Agreement was signed in counterparts by the named Plaintiffs, seven opt-in Plaintiffs, Defendant EP Wrap-It Insulation, Plaintiffs' counsel, and Defendants' counsel. *Doc. 81-1* at 4, 12–22.

On March 22, 2021, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement. *Doc. 79.* On May 7, 2021, upon review of the Plaintiffs' Motion and the parties' Settlement Agreement, the Court noted that the Settlement Agreement purported to release FLSA claims of all class members despite the fact that FLSA collective actions require written consent of all plaintiffs. *Doc. 82* at 2. The Court ordered the parties to file supplemental briefing addressing the scope of the release as to absent class members. *Id.* at 3. On June 7, 2021, Plaintiffs filed a supplemental brief in which they agree that plaintiffs must opt-in to FLSA claims to be bound by settlement of them. *Doc. 83* at 1. The parties jointly collaborated on a revised notice form clarifying that the scope of the release as to absent class members is limited to "class claims." *Id.* at 2, 4–6.

## II.    LEGAL STANDARDS

Class actions on state law wage claims brought in federal court are governed by Rule 23 of the Federal Rules of Civil Procedure.  Class members must affirmatively opt out of the class if they do not wish to be bound by the judgment.  Fed. R. Civ. P. 23(c)(2)(B); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016). The Court must certify a Rule 23 class action at "an early practicable time," so that class members receive notice and instructions for how to opt out of the class.  Fed. R. Civ. P. 23(c)(1)(A).  Settlement of a Rule 23 class action must be approved by the Court.  Fed. R. Civ. P. 26(e).

Collective actions brought pursuant to the FLSA are governed by 29 U.S.C. § 216(b).  Unlike class actions, collective actions require that potential plaintiffs affirmatively opt-in to the action to be bound by the judgment, including any settlement.  *Pliego*, 313 F.R.D. at 124; 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party . . . .").  Collective actions are certified conditionally for the purpose of providing potential plaintiffs with notice and an opportunity to join the suit.  *Guarriello v. Asnani*, 2021 WL 406437, at *3 (D.N.M. Feb. 5, 2021) (unpublished); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001).

Circuit courts are split on whether settlement of a FLSA collective action requires court approval, and the Tenth Circuit has not yet addressed the topic.  *Hawthorn v.*

*Fiesta Flooring, LLC*, 2020 WL 3085921, at *1 (D.N.M. June 10, 2020) (unpublished). This district court and many others in this circuit have taken the position that approval of a collective settlement under the FLSA is limited to determining that the parties have a bona fide dispute and that there is no apparent defect in the parties' negotiations. *Id.* at *2–4. As the standard for settlement approval under Rule 23 is considerably stricter and fairly subsumes the FLSA standard, the Court will presume that a settlement approved under Rule 23 can also be approved under the FLSA.

### III. CERTIFICATION

Before providing preliminary approval, the Court must first certify the Rule 23 class for settlement purposes. *See* Fed. R. Civ. P. 23(c), (e). In resolving the certification question, the Court does not inquire into the merits of the suit unless "necessary to determine the propriety of certification." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (internal quotation marks and citation omitted). Certification requires assessing the proposed class according to the requirements of Rule 23(a) and (b). *See, e.g., Flerlage v. US Foods, Inc.*, 2020 WL 4673155, at *2 (D. Kan. Aug. 12, 2020) (unpublished). Rule 23(a) sets forth the requirements for certifying any class action; Rule 23(b) describes the permissible types of class actions that may be maintained. Rule 23(a) provides that a class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the
interests of the class.

Fed. R. Civ. P. 23(a).

The proposed class in this case is "all present and former non-managerial hourly employees of EP Wrap-It Insulation" employed during the period of May 31, 2016, through September 22, 2019. *Doc. 81-1* at 3–4 (footnote omitted).

### A.  <u>Numerosity</u>

Based on payroll records supplied by Defendants and analyzed by Plaintiffs' counsel, there are 51 class members, including the two named Plaintiffs who initiated this suit and seven additional Plaintiffs who have opted-in under the FLSA. *Doc. 80* at 3.  A class of more than 50 members is sufficient to make joinder impracticable. *See Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 669 (D.N.M. 2015).

### B.  <u>Commonality</u>

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). Commonality may be found where the class is challenging a commonly applied policy. *Pliego*, 313 F.R.D. at 126; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–52 (2011).  Plaintiffs' Complaint alleges that Defendants regularly required Plaintiffs and similarly situated employees to perform work-related tasks without compensation and to work over forty hours per workweek without compensation at overtime rates. *Doc. 1* at ¶¶ 33, 37, 43.  Whether Defendants had a regular practice of requiring employees to

work "off the clock" and to work more than 40 hours without overtime pay is a question capable of a common resolution for the class.

**C. <u>Typicality</u>**

Typicality is satisfied where "there is a sufficient nexus between the claims of the class representatives and the common questions of law or fact which unite the class." *Decoteau v. Raemisch*, 304 F.R.D. 683, 689 (D. Colo. 2014).  The class representatives, Plaintiffs Daniel Cisneros and Alberto Estrada, allege that they worked for Defendants as insulators prior to 2019, were regularly required to work more than 40 hours every workweek, and did not receive overtime pay or prevailing rates for insulators.  *Doc. 1* at ¶¶ 4–10; *doc. 79* at 3.  The claims of Plaintiffs Cisneros and Estrada are fully typical of the claims alleged on behalf of the class.

**D. <u>Adequacy of Representation</u>**

In determining whether the interests of the class will be fairly and adequately protected, the Court asks two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).  Regarding possible conflicts, the Settlement Agreement discloses the fact that the proposed class includes two individuals (Abram Lucero, Jr. and Lauro Lucero) who are presumably related to Defendants Abram and Cynthia Lucero.  *Doc. 81-1* at 4 n.1.  These class

members have not been involved in this litigation to date. If they participate in the claims process, they will be entitled to no more or less than an equal share in the recovery as other class members. No conflict of interest prevents the named Plaintiffs or their counsel from fairly and adequately representing the interests of the class.

Additionally, the named Plaintiffs and their counsel have vigorously prosecuted this action. Plaintiffs Cisneros and Estrada have actively participated in discovery and settlement negotiations to bring this matter to a resolution. *Doc. 80* at 9; *doc. 70.* Class counsel are experienced in handling wage and hour class and collective actions and have been active in litigating and settling this case. *Doc. 80* at 6–8. The interests of the class are fairly and adequately represented by Plaintiffs Cisneros and Estrada and their counsel.

### E. Rule 23(b)

Plaintiffs seek certification as a Rule 23(b)(3) class action. *Doc. 79* at 11. A class action under Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors for considering the superiority of a class action include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

*Id*. The final factor, manageability, need not be considered in the context of a settlement-only class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Common questions in this case include whether employees were required to perform work-related tasks without pay and to work over forty hours per workweek without compensation at overtime rates. Individual questions include the actual hours of un- or undercompensated work that each class member performed, but individualized damages are insufficient to outweigh the predominance of common questions of liability. *See Felps v. Mewbourne Oil Co.*, 336 F.R.D. 664, 675–78 (D.N.M. 2020). Another individual question at issue is whether each class member worked as an insulator (entitling them to higher rates under New Mexico law) as opposed to a general laborer. *Doc. 80* at 3–4. This question is a subject of contention between the parties, which Plaintiffs' counsel has identified as one of the risks of proceeding to trial. *Id*. Because the parties are choosing to settle rather than litigate this individualized question, the common questions are predominant.

Turning to superiority, there is no indication that any class member has an individualized interest in litigating the claims at issue here. Nor is the Court aware of any other pending litigation on this matter. *See doc. 79* at 13. The District of New Mexico is an appropriate forum for this suit, as the class members allegedly worked on

projects in New Mexico and bring claims under New Mexico law. *See doc. 1* at ¶¶ 8–9.

The proposed class is a superior form of resolution of this action.

For the foregoing reasons, the Court certifies Plaintiffs' state law claims as a class

action pursuant to Rule 23(a) and (b)(3).

### F. **Appointment of Class Counsel**

Upon certification of a Rule 23 class, the Court must also appoint class counsel.

Fed. R. Civ. P. 23(c)(1)(B). The Court must consider:

> (i) the work counsel has done in identifying or investigating potential
> claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation,
> and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider other matters "pertinent to

counsel's ability to fairly and adequately represent the interests of the class." Fed. R.

Civ. P. 23(g)(1)(B).

The firm of Weinberg, Roger & Rosenfeld, based in California, has its primary

practice in the field of labor and employment law, and it has represented employees in

several wage and hour class actions. *Doc. 80* at 6–7. Ms. Yen has been practicing in this

field for over twenty years and has served as lead attorney in a number of cases in

which Weinberg, Roger & Rosenfeld has served as class counsel. *Id.* at 7. The firm of

Youtz & Valdez, based in New Mexico, also has a regular practice in the field of

employment law. *Id.* at 7–8. Mr. Montalbano is an attorney admitted to practice in

New Mexico and before this Court since 2013 with experience litigating wage and hour class and collective actions. *See id.* at 7. Ms. Yen and Mr. Montalbano have worked on this case from its inception and were actively involved in settlement negotiations. *See docs. 70, 71.* The Court finds that they have provided fair and adequate representation to the class. Therefore, the firms of Weinberg, Roger & Rosenfeld and Youtz & Valdez are appointed as class counsel.

## IV. PRELIMINARY APPROVAL

The Court approves a Rule 23 settlement "only on finding that it is fair, reasonable, and adequate" based on whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 26(e)(2). The Court must provide preliminary approval and direct that notice be sent to all class members if it finds that it "will likely be able to" approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B); *see* William B. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2021).

In addition to the Rule 23 test, the Tenth Circuit applies a four-factor test to the approval of class settlements. *Wells v. Best Buy Co. (In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.)*, 997 F.3d 1077, 1087 (10th Cir. 2021). Under the Tenth Circuit's test, the Court must consider:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188. When it amended Rule 23 in 2018, the advisory committee noted that the new Rule 23(e)(2) was not intended to displace any circuit-specific factors "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The first three *Rutter* factors overlap with the Rule 23 factors, but the Rule 23 factors highlight concerns specific to the rights of absent class members. *See, e.g., Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 800–01 (S.D.N.Y. 2020) (finding that circuit-specific factors favor preliminary approval but Rule 23(e) factors raise concerns about the rights of absent class members). Moreover, the fourth *Rutter* factor cannot be adequately assessed until absent class members have had an opportunity to object. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 762 (10th Cir. 2020)

(unpublished). Therefore, the Court will adhere to the Rule 23(e) factors for its preliminary analysis.

**A. <u>Adequacy of Representation</u>**

As discussed above for purposes of certification and appointment of class counsel, the named Plaintiffs and class counsel have adequately represented the class throughout this litigation including during settlement negotiations. For preliminary purposes, the Court finds that the class is adequately represented.

**B. <u>Arm's-Length Negotiations</u>**

The Court finds that the Settlement Agreement is the product of arm's-length negotiations. This case has been actively litigated, with several disputes raised on both sides. *See, e.g.*, *doc. 13* (Defendants' Motion to Dismiss); *doc. 45* (disputes concerning conditional certification); *doc. 64* (discovery disputes). Settlement negotiations proceeded before Magistrate Judge Fouratt across several months, followed by several months of discussions to finalize the Settlement Agreement. There is no reason to believe this Settlement Agreement is a product of collusion.

**C. <u>Adequacy of Relief</u>**

      1. <u>*Agreement Identified Pursuant to Fed. R. Civ. P. 23(e)(3)*</u>

The Court will first review the terms of the Settlement Agreement and then discuss whether the Court will likely be able to approve the relief it provides. In exchange for a gross payment of $160,000.00, the class releases Defendants from

all claims alleged in the action . . . including any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against [Defendants], for alleged unpaid wages and overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution and any and all other compensation or relief of any kind arising under the FLSA, NMMWA, any and all state prevailing wage claims, and any and all other claims that emanate from and are based upon the same facts alleged in the Action with respect to the time that Plaintiffs or any putative class members were employed by Defendant during the [period of May 31, 2016 through September 22, 2019].

*Doc. 81-1* at 3–5. The Settlement Agreement provides that Defendants will pay the $160,000.00 in three installments over a period of 120 days beginning 7 days after the fairness hearing. *Id.* at 5, 7. The first installment will be in the amount of $60,000.00 and the last two installments, each to be paid 60 days after the last, will be in the amount of $50,000.00 each. *Id.* at 7. The installments will be apportioned such that "no payee(s) receiv[es] their share(s) earlier than others." *Id.* The order of distribution is as follows: (1) a fee award to class counsel of one-third (or $53,333.33) of the total settlement payment, *id.* at 3, 5–6; (2) Plaintiffs' recoverable costs, including costs to administer the settlement subject to a maximum reimbursement of $3,000.00, *id.* at 6, 8; (3) Defendants' reasonable costs incurred in preparing settlement checks, subject to a maximum reimbursement of $8,000.00, *id.* at 6, 8; (4) enhancement payments of $2,500.00 each to the class representatives, *id.* at 6; and (5) pro rata shares of the remaining funds (the "Net Settlement Amount") to each "Participating Class Member," *id.*

To be a "Participating Class Member," a class member must fill out and return a claim form to class counsel within sixty (60) days of class counsel mailing (or re-mailing) notices. *Id.* at 6, 10. In the event that a mailing is returned undeliverable, class counsel will perform computer and "skip trace" searches to locate an updated address for re-mailing. *Id.* at 10. Class members who have joined this suit under the FLSA are deemed Participating Class Members without needing to complete a claims form. *Id.* at 6. Pro rata shares will be determined based on each Participating Class Member's weeks worked during the relevant period divided by the total weeks worked by all members. *Id.* For tax purposes, half of each class members' share will be deemed wages subject to withholding and half will be deemed non-wages in satisfaction of Plaintiffs' claims for interest, liquidated damages, and penalties. *Id.* at 6–7.

The Settlement Agreement also provides for redistributions to Participating Class Members in the event that any checks are not cashed within 180 days after mailing or delivery. *Id.* at 8–9. Only Participating Class Members who cashed their checks will be entitled to receive redistributions. Funds may revert to Defendants in the event that (1) the first round of payments to class members results in uncashed checks of $2,500.00 or less; or (2) the second round of payments results in uncashed checks 60 days after mailing or delivery. *Id.*

2. *Costs, Risks, and Delay of Further Litigation*

Class counsel has estimated that Defendants' maximum potential liability is $125,000.00 for unpaid off-the-clock wages and $48,000.00 for paying less than prevailing rates under New Mexico law. *Doc. 80* at 8. Class counsel notes that Defendants dispute that they have failed to pay wages for all time worked and that all class members were entitled to the higher prevailing wage rates applicable to insulators as opposed to general labors. *Id*. As previously noted, certification under Rule 23 would have been opposed by Defendants if not for this settlement, thereby increasing the costs and delays of litigation. Class counsel also notes that recovery for liquidated damages, penalties, and interest is largely uncertain. *Id*. at 9. Finally, class counsel notes the risk that Defendants might seek bankruptcy relief in the event of judgment in Plaintiffs' favor at trial. *Id*. at 3. In light of the costs and risks of recovery at trial, a settlement in the amount of $160,000.00 affords adequate relief to the class.

3. *Method of Distribution*

The Settlement Agreement requires class members to mail in claim forms to share in the recovery. Courts have noted that requiring class members to submit claims forms generally results in low participation. *See, e.g., McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 388 (S.D.N.Y. 2017). Where participation rates are likely to be low, courts have expressed concern that non-participating class members face a lose-lose situation—by failing to opt out, they are bound by the settlement, but by

failing to participate, they take no share in the recovery.  *See, e.g., Valverde v. Xclusive Staffing, Inc.*, 2019 WL 3075339, at *9 (D. Colo. July 15, 2019) (unpublished). Nonetheless, courts routinely approve such settlements notwithstanding low participation rates.  *See Resnick v. Fran (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 945 (9th Cir. 2015) (noting that settlements have been approved with less than 5% participation).

Concerns regarding low participation are heightened when a settlement agreement provides for unclaimed funds to revert to the defendant.  *See, e.g., McGreevy*, 258 F. Supp. 3d at 388.  Such reversionary or "kicker" clauses may be a warning sign that a class settlement was not negotiated in the best interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 783 (7th Cir. 2004); *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011).  No court, however, has adopted a *per se* rule against these clauses.  *See In re Samsung*, 997 F.3d at 1088.  Furthermore, courts and commenters have noted that a kicker clause may be instrumental in a defendant's decision to settle, especially where there is a possibility of further litigation on unsettled individual claims.  *See id.* at 1089; *Dexter v. Ministry Health Care*, 2015 WL 1326361, at *4 (W.D. Wis. Mar. 25, 2015); Rubenstein, *Newberg on Class Actions* § 12.29.  The Tenth Circuit recently held that a kicker clause requires heightened scrutiny when present in conjunction with a "clear-sailing" clause.  *In re Samsung*, 997 F.3d at 1091.  A "clear-sailing" clause is one in which the defendant agrees not to object

to class counsel's request for attorney's fees. *Id.* at 1088. Both a kicker clause and a clear-sailing clause are present here. *Doc. 81-1* at 6, 8. Hence, the Court will apply heightened scrutiny.

The parties' proposed settlement is structured to mitigate some of the usual concerns with reversionary funds. Because the Net Settlement Amount is distributed pro rata to all Participating Class Members, a low participation rate would not affect the size of the reversionary fund, and it is less likely that any individual who takes the trouble to submit a claim would thereafter fail to cash any check he receives. *See* Fed. Trade Comm'n, *Consumer and Class Actions: A Retrospective and Analysis of Settlement Campaigns* 23 (2019) (finding a median check-cashing rate of 94% in claims-made settlements). Uncashed funds from the initial distributions revert to Defendants only in the event that the total value is equal to or less than $2,500.00. Such a condition is reasonable in light of the costs that would be incurred in issuing redistribution checks. *See* Principles of the Law of Aggregate Litigation § 3.07 cmt. b (Am. Law Inst. 2010).

On the other hand, in the event that initial distributions totaling more than $2,500.00 are not cashed, there is a possibility that a significant portion of the Net Settlement Amount will revert to Defendants, particularly in light of the 60-day deadline for cashing redistribution checks. While a deadline of 180 days is reasonably foreseeable in light of the fact that banks are not required to honor checks past six months, *see* N.M. Stat. Ann. § 55-4-404, a 60-day deadline is unusual. It is especially

troubling that the notice proposed by the parties does not inform class members of the

possibility that redistribution checks will be issued nearly a year[1] after the settlement is

approved (let alone that such checks will expire in 60 days). Thus, a deadline of 60 days

carries a real risk that funds may revert to Defendants before class members are able to

cash any redistribution checks. However, this risk may be adequately mitigated by a

more informative notice to class members, a topic the Court discusses more fully below.

Upon an amended notice, the method of processing and distributing settlement funds

to the class will likely be adequate.

### 4. *Proposed Attorney's Fees*

Attorney's fees must be sought by motion under Rule 54(d)(2) with notice

provided to all parties and class members. Fed. R. Civ. P. 23(h)(1). Class counsel intend

to apply for a fee award when they move for final settlement approval. *Doc. 80* at 9.

Defendants have agreed not to oppose the claimed attorney's fees, but Rule 23 instructs

that class members must also have the opportunity to raise any objections. *See* Fed. R.

Civ. P. 23(h)(2). For preliminary purposes, the Court notes that the proposed fee of one-

third of the total settlement is a standard contingent fee in class actions in this and other

---

[1] Pursuant to the Settlement Agreement, redistribution will occur only after "the end of the check cashing period of the third installment payments," *i.e.*, 307 days after the fairness hearing (127 days for the third installment plus 180 days for the check cashing period). *Doc. 81-1* at 7–8. Then, the Settlement Agreement provides that Plaintiffs' counsel will have 21 days to send Defendants a breakdown of the amounts to be redistributed and Defendants will have 21 days to issue checks. *Id.* at 8. Thus, the Settlement Agreement contemplates that redistribution checks will be issued 349 days after the fairness hearing.

district courts in this circuit.  *See Candelaria v. Health Care Serv. Corp.*, 2020 WL 6875828, at *3 (D.N.M. Nov. 4, 2020) (unpublished); *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *4–5 (D. Kan. June 18, 2020) (unpublished); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008) (unpublished).  Therefore, the Court finds that it will likely be able to approve the proposed fee award.

Taking into account all the above considerations, the relief provided to class members in the Settlement Agreement is adequate.

### D. <u>Equitable Treatment Among Class Members</u>

Considerations for the final Rule 23(e)(2) factor include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  Other considerations relevant to the equitable treatment of class members include the allocation of incentive awards to class representatives.  *See, e.g., Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, 2021 WL 1339305, at *9 (D.N.M. Apr. 9, 2021) (unpublished).

The Settlement Agreement purports to release all claims that were or could have been asserted in this case, including claims under any state law (*i.e.*, both New Mexico and Texas) as well as the FLSA.  *Doc. 81-1* at 4.  The release extends to all named Plaintiffs, opt-in Plaintiffs, and class members who do not opt-out of the Rule 23 class.

*Id.* at 5.  In their supplemental brief, the parties acknowledge that individuals who have

not opted-in to the FLSA collective action cannot be bound by settlement of those

claims.  *Doc. 83* at 1.  At the same time, the parties direct the Court's attention to case

law holding that *res judicata* bars individuals who failed to opt-out of a Rule 23 class

settlement from relitigating FLSA claims included therein.  *Id.* (citing *Kuncl v. Int'l Bus.*

*Mach. Corp.*, 660 F. Supp. 2d 1246, 1254 (N.D. Okla. 2009)).  As the parties have amended

the notice to clarify that the scope of the release is limited to "class claims," the Court

construes the parties' Settlement Agreement as releasing (A) FLSA claims of named and

opt-in Plaintiffs and (B) state law claims of the entire class.  So construed, the Settlement

Agreement subjects some class members to a wider release than others.  However,

courts do not permit plaintiffs to obtain double recovery for wage claims under both the

FLSA and state law.  *Rivera v. McCoy Corp.*, 240 F. Supp. 3d 1150, 1154 (D.N.M. 2017).

Thus, Participating Class Members[2] who did not opt-in to the FLSA claims will be

precluded nonetheless from pursuing FLSA claims arising from the same time period.

For this reason, courts routinely approve "hybrid" settlements of FLSA and state law

---

[2] Nonparticipating class members, on the other hand, will not receive any recovery under this Settlement Agreement and thus are not precluded from pursuing FLSA claims.  But recovery may be unavailable to them as a practical matter due to the statute of limitations, which is not tolled by this suit for any plaintiff who does not consent to join it.  *See* 29 U.S.C. § 256(b).  The proposed class covers claims up to September 22, 2019, thus individuals who have not joined the FLSA action may have lost their chance to recover on individual claims or may do so by the time this case comes to the final approval stage.  *See* 29 U.S.C. § 255(a) (establishing statute of limitations of two years for non-willful violations).  This risk to nonparticipating members is the same risk that any individual faces when she rests on her rights, thus it does not present any concerns for purposes of settlement approval.

claims.  *See, e.g., Dexter*, 2015 WL 1326361, at *3–4.  As a practical matter, the scope of the release in this case does not raise concerns regarding the relative treatment of different class members.

The Settlement Agreement provides for enhancement payments to the class representatives.  Enhancement payments, or incentive awards, to class representatives are justified when necessary to induce individuals to come forward on a claim for the benefit of the class.  *UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009) (unpublished).  In wage and hour cases, incentive awards are a recognition of the risks that class representatives incur vis-à-vis current and prospective employers.  *See Pliego*, 313 F.R.D. at 131.  Larger incentive awards have been approved in other wage cases (albeit with larger gross settlement amounts) in this and other districts.  *See Montgomery*, 2021 WL 1339305, at *9 (collecting cases and approving incentive payment of $25,000).  Plaintiffs Cisneros and Estrada have been involved in all stages of this suit, including initial investigations, discovery, and settlement negotiations.  *Doc. 80* at 9; *doc. 70*.  The proposed enhancement payments of $2,500 are appropriate for the named Plaintiffs' level of involvement in this case and in proportion to the gross settlement amount.

Aside from the enhancement payments, the Settlement Agreement treats all class members the same, providing that they will receive their pro rata shares at the same time and that the shares will be determined by application of an identical formula,

ensuring an equitable allocation according to each class member's hours worked. Overall, the Settlement Agreement provides for equitable treatment of all class members relative to each other.

In consideration of each factor under Federal Rule of Civil Procedure 23(e)(2), the Court finds that it will likely be able to approve the proposed settlement of the class claims.

## V.    NOTICE

Having preliminarily approved the Settlement Agreement, the Court next considers whether the parties' proposed notice is proper in manner, form, and content. The Court must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The notice must be written in "plain, easily understood language" and explain:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The parties propose to send notice by first-class regular U.S. mail to class members at their last known addresses as contained in Defendants' payroll records. *Doc. 81-1* at 9–10. Class counsel will also perform internet searches to verify class members' current addresses and skip-trace searches in the event of returned mailings. *Id.* at 10. The proposed method of notice is designed to ensure individual notice to the best extent practicable.

The notice includes a summary of the nature of the action and the claims, issues, and defenses, written in plain, easily understood language. *See doc. 83* at 5. The class is defined in terms that will be easily understood by the recipients of the notice. *Id.* The notice clearly delineates the options available to class members and explains the steps that class members must take to exercise each option. *Id.* at 4–7. Regarding "the binding effect of a class judgment," the revised notice is clear that the settlement applies to "class claims" and that failure to opt out of the class will effect a release of state claims. *Id.* at 6. The Court finds the revised notice adequate to inform class members of the scope of the settlement, especially as class members have previously received notice of their right to pursue FLSA claims individually. *See doc. 36-19* at 4. The Court will, however, require one additional amendment. On page one, the notice states that submitting a claim form is "the <u>only</u> way for [class members] to get a cash payment." *Doc. 83* at 4. The Court will require the parties to add "from this settlement" to avoid the suggestion that this settlement forecloses all individual claims.

Finally, as mentioned previously, the notice fails to inform class members that redistribution checks may be issued to them nearly a year after the settlement is approved and that such checks may expire if not cashed within 60 days. The notice does inform class members that settlement funds will be issued in three installments over a period of 127 days. *Id.* at 6. Because this information is incomplete and potentially misleading, the notice must be amended to clarify that class members may receive additional distributions up to a year after the fairness hearing, which may be canceled if uncashed after 60 days.

Subject to these amendments, the Court will direct that notice be made as proposed by the parties.

## VI.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED AS FOLLOWS**:

(1)    The Court GRANTS the Motion for Preliminary Approval of Class Action Settlement (*doc. 79*).

(2)    The Court CERTIFIES the following class for settlement of state law claims under Rule 23:  All present and former non-managerial hourly employees of EP Wrap-It Insulation employed during the period of May 31, 2016 through September 22, 2019.

(3)    The Court APPOINTS Youtz & Valdez and Weinberg, Roger & Rosenfeld as class counsel.

(4)     The Court DIRECTS that, within thirty (30) days of this Order, class counsel

shall mail notices to all class members via first-class regular U.S. mail.  The

form and content of the notices shall be in the revised form proposed by the

parties (*doc. 83* at 4–7) with the following additional revisions:

    (a)    On page one:
            "This is the <u>only</u> way for you to get a cash payment."
            **MUST BE CHANGED TO:**
            "This is the <u>only</u> way for you to get a cash payment
            from this settlement."

    (b)    On page three, after:
            "The second installment will be issued 60 days later, and the
            third installment will be issued 60 days after that."
            **A NEW PARAGRAPH MUST BE ADDED:**
            "If any settlement payments are not cashed within 180 days,
            they will be redistributed to the Class.  You may receive
            additional payments up to a year following final approval of
            the settlement. Redistribution payments must be cashed
            within 60 days."

(5)     A fairness hearing will be held on **January 12, 2022 at 1:30 p.m. in the Doña**

**Ana Courtroom at the United States Courthouse, 100 North Church Street,**

**Las Cruces, New Mexico.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**