UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

DANIEL CISNEROS and ALBERT
ESTRADA on behalf of themselves and others
similarly situated,

Plaintiffs,

v.

EP WRAP-IT INSULATION, LLC; CYNTHIA
LUCERO; AND ABRAM LUCERO,

Defendants.

Case No. 19-cv-500-GBW-GJF

**PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

Date: January 12, 2022 (see ECF#84)
Time: 1:30 p.m. Mountain Time
Judge: Mag. Judge Gregory B. Wormouth
Location: 360 Dona Ana Courtroom (South
Tower), 100 North Church Street, Las
Cruces

## <u>INTRODUCTION</u>

On July 14, 2021, this Court issued an Order granting preliminary approval of the class action settlement reached by Plaintiffs and Defendants and directed that notice be sent to the Settlement Class. (ECF #84.) The notice and claims administration process has been successfully completed except for sending notices to three addresses, which is easily rectified subject to the Court's approval, as explained below in part V.D of this motion.

Plaintiffs ask the Court to grant final approval of the Settlement as soon as a further declaration is submitted regarding the completion of the notice procedure. Plaintiffs submit that the Settlement Agreement is fair, adequate and reasonable to the Settlement Class. As explained in further detail below, the Court should grant final approval because:

- The Settlement is fair, reasonable, and adequate.
- Defendant will pay up to the maximum settlement sum of One Hundred

and Sixty Thousand Dollars ($160,000.00).

- Not a single class member has objected to the settlement, nor has any class member opted out, out of a total potential class size of 55. (See Declaration of Anne I. Yen filed herewith, ¶¶ 4, 10-12.)

- As the result of the claims administration process, the Participating Class Members who returned timely claim forms will receive a monetary payment from the settlement. Pursuant to section 5f of the Settlement Agreement (ECF#81-1), each Participating Class Member's pro-rata share will be proportional based upon the number of weeks he worked during the covered period. There are 24 Participating Class Members. (Yen Dec., ¶ 9.) The Participating Class Members will receive approximately $98,574.00[1] as a group, which is an average of about $4,107 per Participating Class Member, subject to applicable tax withholdings on the amounts treated as wages. (*Id.* ¶¶ 14, 15.)

- Participating Class Members will receive a guaranteed recovery without risk of nonpayment, delay, or an adverse judgment at trial.

Also supporting approval is the recognition in the law favoring settlement in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976). For these and the additional reasons set forth below, Plaintiffs respectfully request that the Court grant this motion for final approval of the class action settlement.

## <u>OVERVIEW OF THE LITIGATION</u>

On May 31, 2019, Named Plaintiffs Daniel Cisneros and Alberto Estrada filed suit against Defendants EP Wrap-It Insulation, LLC, et. al ("EP Wrap-It"),

---

[1] $98,574.00 is the amount remaining after deducting the requested attorneys' fee award, recoverable costs, and $2,500 each for Daniel Cisneros and Alberto Estrada as enhancement fees for their services to the class as class representatives. (Yen Dec., ¶ 14. Under section 5d of the Settlement Agreement, Defendant may request reasonably necessary costs of preparing the settlement checks, subject to the limitations set forth in section 6b (ECF #81-1), but at the time of this writing, Defendant's counsel has not identified any such costs to Plaintiffs' counsel.

alleging violations of the Fair Labor Standards Act (FLSA) and related state-law claims. Plaintiffs allege that they and other insulators employed with EP Wrap-It were subject to EP Wrap-It's practice of failing or refusing to pay them for time they worked before and after they were at job sites – reporting to the EP Wrap-It shop, loading trucks, traveling to the sites, and returning to the shop and unloading afterwards. (Amended Complaint, ECF#10, ¶33.) In addition, Plaintiffs allege that Defendants failed to pay them, and similarly situated employees, overtime for all overtime hours worked at the correct rates under the FLSA. (*Id.* at ¶35.) Plaintiffs allege pendent related claims under state law, including failure to pay minimum wages and correct overtime wages under New Mexico's Minimum Wage Act, 50-4-20 NMSA, *et seq.*("NMMWA") and state prevailing wage laws, both as a collective action under the FLSA and as a putative Rule 23 class action.

Defendants deny the allegations asserted in the Action, deny that class treatment is appropriate, and deny liability to the Plaintiffs and putative class members.

On October 31, 2019, five additional Plaintiffs opted in to join the action (ECF#27). After conditional certification to pursue the FLSA claim through the procedure of a collective action under the FLSA, Plaintiffs sent notice of the claim to the last known addresses of all hourly non-managerial employees of Defendant during the period of May 31, 2016 to April 1, 2020. Two additional Plaintiffs opted in to join in the action. (ECF#51-53.) Each of the seven Plaintiffs who opted in under the FLSA are, like the original Named Plaintiffs, former employees of Defendant who left the company prior to 2019.

The parties participated in a settlement conference before Magistrate Judge Gregory Fouratt on August 24, 2020 and subsequent negotiations with the assistance of the settlement conference judge. Prior to the settlement conference, the Parties engaged in substantial written discovery; and Defendants provided

Plaintiffs' Counsel with wage and hour data for Plaintiffs during their entire employment with Defendants and for all putative class members for the period of May 31, 2016 to September 22, 2019 ("Class Period"), which Class Counsel and Defendant's Counsel reviewed and analyzed prior to the settlement conference. (ECF#80, ¶ 5.) Defendants also provided evidence of a risk that, in the event of a trial and judgment in favor of Plaintiffs and the putative Rule 23 class, Defendants would seek dissolution of the business and bankruptcy relief, jeopardizing the ability of Plaintiffs and the putative class to collect a recovery. (ECF#80, ¶ 9.)

Named Plaintiffs contend common issues arise in this Action due to Defendant's pre-shift and post-shift practice of requiring the proposed class to perform off-the-clock work. However, despite Named Plaintiffs' allegations regarding these off-the-clock practices, Named Plaintiffs acknowledge the significant risks involved in obtaining or maintaining class action status in this matter, including, but not limited to, a risk that Defendants contend not all the putative class members were in fact "insulators" for the purpose of the prevailing wage claims, and a risk that Defendants contend that not all members of the putative class are similarly-situated. Plaintiffs are also mindful of the affirmative defenses Defendant has raised since the outset of this action. While Plaintiffs continue to dispute the validity of these affirmative defenses, the fact that this case, short of settlement, would have involved considerable motion practice to deal with these defenses cannot be ignored. Moreover, Plaintiffs consider the serious risk that, even if Plaintiffs prevail on Rule 23 class certification and go on to prevail at trial, Plaintiffs and the putative class members might not be able to collect such a recovery if Defendants seek bankruptcy relief. Taking all these considerations into account, Plaintiffs' counsel believe the settlement is fair and reasonable. (ECF#80, ¶¶ 8-14.)

The settlement is the result of an informed and detailed analysis of the risks facing both parties in litigating this case, including, but not limited to, careful consideration of the legal and factual obstacles to Plaintiffs' prospects of obtaining class certification and on the merits, and Defendant's defenses, as well as Defendant's potential exposure and the additional costs of litigating the Action.

## I.    SUMMARY OF SETTLEMENT TERMS

In the Agreement (ECF#81-1), Defendant EP Wrap-It Insulation, LLC agrees to pay a total of $160,000.00 to settle the claims up to the date of signing the Agreement that were asserted in the Action and all other claims emanating from the same facts alleged in the action, with respect to Plaintiffs and Settlement Class members employed by Defendant in the Class Period.  The Settlement Agreement releases the FLSA claims of Named Plaintiffs and all opt-in Plaintiffs, and state law claims of the entire class.[2]  The release of those claims takes effect when Defendant has completely paid all installments of the settlement.  (See sections 1(l), 1(n), 2, 3, and 5(a) of the Agreement.)

Pursuant to the Order Granting Preliminary Approval of Class Action Settlement (ECF#84), Plaintiffs' counsel sent notice to the Settlement Class members by mail, in the form approved by the Court, including the two amendments directed in the Order.  (Yen Dec. ¶¶ 2, 3, 6; see also Agreement at ECF#81-1, section 9.)  The Notice included: information regarding the nature of the lawsuit; a summary of the substance of the settlement; the settlement class definition; the procedure and time period to submit a claim or objection to the settlement; the date set for the Final Approval hearing; and the formula to be used for the Participating Class Members' settlement payments.  (ECF#81-1, section

---

[2] As the Court correctly determined in the Order Granting Preliminary Approval, the different scope of the release for the FLSA claim does not detract from the Settlement Agreement's equitable treatment among class members, in light of *res judicata* and statute of limitations considerations.  (ECF#84, pp. 21-22.)

9a.)  The Settlement Class members then had 60 days to return Claim Forms.  (*Id.* at subd. c.)  Those who did so will receive shares of the settlement which will be calculated as set forth in the Agreement.  (*Id.* at section 5(f).)

The settlement funds are to be distributed as set forth in section 5 of the Agreement, which the Court has preliminarily approved:  Plaintiffs' counsel apply to the Court for an award of reasonable attorneys' fees in the amount of one-third (1/3) of the Gross Settlement Amount, which is $53,333.33, and Defendants agree that they shall not oppose any award of fees up to that total amount; Plaintiffs' counsel apply to the Court for an award of recoverable costs incurred in the action, including reasonable costs to administer the class notice and claims procedure; to the extent that Defendants will incur reasonably necessary costs in preparing the settlement checks, Defendants will apply for such costs to be deducted from the Gross Settlement Amount, and Plaintiffs shall not oppose subject to the maximum charge back limitations set forth in section 6(b); Plaintiffs' counsel apply to the Court for approval of reasonable enhancement payments in the amount of $2,500 each to Named Plaintiffs Daniel Cisneros and Alberto Estrada, who actively assisted Class Counsel in prosecuting and settling this case for the benefit of the Settlement Class; and the Net Settlement Amount remaining shall be paid entirely to Settlement Class members who timely return signed claim forms ("Participating Class Members")[3].  Each Participating Class Member's share shall be determined by dividing the member's weeks worked during the Class Period into the number of man-work-weeks worked by all Participating Class Members during the Class Period and applying the resulting fraction to the Net Settlement Amount. (Agreement sections 5(a) through (f).)

---

[3] Plaintiffs shall be included as Participating Class Members without the need to return claim forms, but shall be subject to all other conditions and requirements of Settlement Class Members.

Defendants have agreed to pay the settlement in three installments after final approval, as set forth in the timeline described in section 6(a) of the Agreement: The first installment of $60,000 shall be paid within seven days after the Court's final approval; the second installment of $50,000 shall be paid within 60 days after the first installment is due; and the third installment of $50,000 shall be paid within 60 days after the second installment is due.

## II.    THE COURT GRANTED PRELIMINARY APPROVAL OF THE SETTLEMENT, AND NOTICE WAS ADMINISTERED

On March 22, 2021, Plaintiffs filed the Motion for Preliminary Approval of Class Action Settlement (ECF#79), and the Motion was granted on July 14, 2021 (ECF#84). The Court determined that Plaintiffs met all of the FRCP 23(a) criteria (numerosity, typicality, commonality; and adequacy of representation), certified the Settlement Class, and appointed Plaintiffs' counsel as class counsel. (ECF#84, pp. 6-11.) The Court approved the proposed Class Notice with two amendments that were incorporated into the version that was mailed to the class. (ECF#84, pp. 24-25, and Yen Dec. Exhibit A.) The Court found that the procedure set forth in the Settlement Agreement for providing notice to the Class was appropriate. (ECF#84, p. 25.)  The content and form of notice of the proposed class action settlement is left to the court's discretion. The only requirement is that the notice must "fairly apprise" class members of the terms of the proposed settlement and of their options. *Gottlieb v. Wiles,* 11 F3d 1004, 1013 (10th Cir. 1993)  (abrogated on other grounds by *Devlin v. Scardelletti,* 536 US 1, 122 S.Ct. 2005 (2002)).

Consistent with the Court's Order and the Settlement Agreement, the office of Plaintiffs' counsel obtained Defendant's list of the last known addresses Defendant had on file; a paraprofessional then searched on Westlaw to update and correct for any known or identifiable address changes.  The office of Plaintiffs' counsel mailed the approved Notice to the Class on August 6, 2021, enclosing

Claim Forms and self-addressed envelopes, postage prepaid. (Yen Dec. ¶¶ 4-6.) Just three of the packets were returned undeliverable. The last date to file a request to be excluded was October 5, 2021, and no one did so. (*Id.* at ¶¶ 10, 11.) The deadline for objections was also October 5, and ***no class members submitted any objections to the settlement***. (*Id.* at ¶¶ 10, 12.) *Compare Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (approving class settlement where 45 of the 126 class members (approximately 36%) expressed opposition to the settlement); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 624 (N.D. Cal. 1979) (approved despite approximately 16% of class having filed opposition).

The notice and claims process was successful and complied with constitutional due process. *See Phillips Petroleum Co.*, 472 U.S. at 812-813 (holding that "a fully descriptive notice [that] is sent [by] first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process"); *Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alter those with adverse viewpoints to investigate and to come forward and be heard."); *Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (holding that "individualized notice by mail to the last known address [is] the 'best notice practicable' in a class action contest") (cert. denied, 423 U.S. 864, 96 S. Ct. 124, 46 L. Ed. 2d 93 (1975)) (citing *Eisen,* 417 U.S. at 174-77).

The Participating Class Members will receive approximately $98,574.00[4] as a group, which is an average of about $4,107 per Participating Class Member, subject to applicable tax withholdings on the amounts treated as wages. (Yen Dec. ¶ 15.)

## III.    LEGAL ANALYSIS

### A.    LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class ...."  In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, 506 U.S. 953 (1992).

Therefore, in making its assessment pursuant to Rule 23(e), the Court's evaluation of what is otherwise "a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers For Justice v. Civil Serv. Comm.,* 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir.

---

[4] $98,574.00 is the amount remaining after deducting the requested attorneys' fee award, recoverable costs, and $2,500 each for Daniel Cisneros and Alberto Estrada as enhancement fees for their services to the class as class representatives.  (Yen Dec., ¶ 14 and Exhibit B.  Under section 5d of the Settlement Agreement, Defendant may request reasonably necessary costs of preparing the settlement checks, subject to the limitations set forth in section 6b (ECF #81-1), but at the time of this writing, Defendant's counsel has not identified any such costs to Plaintiffs' counsel.

2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

A settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justic*e, 688 F.2d at 625.  To the contrary, the involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's-length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (aff'd, 661 F.2d 939 (9th Cir. 1981)).

As explained above, the settlement was reached after vigorous litigation by experienced counsel on both sides, which included extensive investigation, informal discovery, formal discovery, a settlement conference with an experienced and respected Magistrate Judge, and months of protracted and extensive arms-length negotiations regarding the exact terms and conditions of the settlement and the notice.  Under these circumstances, the settlement should be afforded a presumption of fairness.

Already here, the Court has granted preliminary approval, the Class Notice has been mailed, and Class Members have been afforded an opportunity to respond.  The present inquiry therefore focuses on whether the settlement is fair, adequate, and reasonable in light of the responses received.  Courts consider "some or all" of the following factors in determining whether a proposed settlement is fair, reasonable, and adequate: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). The Court need not consider all of these factors; rather, it must only consider those factors that are designed to protect absentees. See *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003) (overruled on other grounds by *Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571 (9th Cir. 2010)). Also relevant is whether "the settlement agreement was reached in arm's length negotiations," which "create[s] a presumption that the agreement is fair." *McKenzie v. Fed. Express Corp.,* 2012 WL 2930201 at *3 (C.D. Cal. July 2, 2012) (quoting *Linney v. Cellular Alaska P'ship*, 1997 WL 450064 at *5 (N.D. Cal. July 18, 1997)). Here, as more fully set forth below, each of these factors weighs in favor of approval and Plaintiffs' Motion should therefore be granted.

1. <u>**Settlement Negotiations Were Conducted at Arm's Length**</u>

As noted in Plaintiffs' moving papers for preliminary approval of settlement and above, the Settlement Agreement was reached after a settlement conference before an experienced Magistrate Judge and protracted arm's length negotiations between counsel. This supports approval. *See, e.g., Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 at *14 (N.D. Cal. filed Apr. 1, 2011) (concluding that a settlement agreement negotiated under a mediator's supervision "supports a finding that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel").

2. <u>**Strength of Plaintiffs' Case**</u>

In evaluating a settlement in this type of complex litigation, courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (footnote omitted.). Thus, compromise is particularly appropriate. *See, e.g., Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224, 246, 250 (2001) ("Compromise is inherent and

necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation."); *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987).

Plaintiffs acknowledge significant risks in obtaining or maintaining class action status in this matter. In addition to vigorously disputing the merits of Plaintiffs' claims, Defendant would also vigorously dispute any request for class certification. (ECF#80, ¶ 8.) Defendant supports certification for settlement purposes only and contends that Plaintiffs could not have obtained certification of any class, and presented detailed evidence, authority, and arguments supporting their opposition to certification and their various defenses on the merits. (*Id.*) In contrast, Plaintiffs believe that this case is suitable for class certification in that alleged company-wide practices could be established using representative testimony and declarations from putative class members. (*Id.*, ¶ 11.) However, while Plaintiffs assert that this is a suitable case for certification, Plaintiffs realize that there is always a significant risk associated with class certification proceedings, and this matter is not an exception. (*Id.*)

In light of the uncertainties of protracted litigation, including the significant risks posed by any disputed certification and merits proceedings, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members. The settlement amount is, of course, a compromise figure. By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant. Moreover, Defendants presented evidence of a significant risk that even if Plaintiffs won class certification and trial after protracted and expensive litigation, Plaintiffs and the putative class might never realize the benefits of such

victory due to the possibility that Defendants would seek bankruptcy relief. (*Id.* at ¶¶ 9, 13.)

As such, this outcome is in line with a carefully constructed estimate of the current fair value of the case that must factor in the substantial risks facing Plaintiffs and the proposed class if litigation continues.

### 3.    <u>The Amount Offered in Settlement</u>

Defendant will pay a cash settlement of $160,000, which includes an average payment of about $4,107 (minus applicable taxes) to the Participating Class Members. (Yen Dec. ¶ 15.) It is essentially non-reversionary; funds may only revert to Defendant in the event that the payment to class members results in uncashed checks of $2,500.00 or less; or in the event that redistributed uncashed funds are uncashed 60 days after mailing or delivery. (ECF#81-1, section 7a.)

The $160,000 settlement achieved by Plaintiffs represents a substantial recovery for approximately 24 Participating Class Members in the face of substantial litigation risks. Based on the detailed payroll information provided by Defendant and based on the testimony of the Named Plaintiffs and several opt-in Plaintiffs, Plaintiffs' counsel estimate that Defendant's maximum potential liability for the putative Rule 23 class claims includes approximately $125,000 for off-the-clock wages, but Defendants vigorously dispute that they have failed to pay for off-the-clock time. (ECF#80, ¶ 23). The value of the claims for Defendant's prevailing wage violations is subject to additional risk factors, due to Defendant's contention that many employees were not working as insulation installers (such that, according to Defendant, it was not required to pay those workers the higher rates for insulation installers, as opposed to general laborers). Absent settlement, if Plaintiffs surmount that hurdle on a motion for class certification and go on to prevail on a class-wide basis on the claim, Plaintiffs' counsel believe Defendant is potentially liable for $48,000 for New Mexico prevailing wage violations.

Defendant's possible liability for Texas prevailing wage claims is more difficult to quantify and subject to different potential defenses under Texas state law, so that Defendant's liability to the putative class for Texas prevailing wage claims could have ranged anywhere from $0 to about $222,000. (*Id.*, ¶ 24). In addition to disputes regarding the merits and the prospects of obtaining class certification, the parties also vigorously dispute the availability and extent of any potential liquidated damages and penalties, on legal and factual grounds, many of which are largely left to the discretion of the Court. Plaintiffs contend that they might also be entitled to additional amounts in the form of liquidated damages, various penalties, and additional interest on those amounts, such that the total estimated exposure may be higher than the unpaid wages alone. However, the uncertainty accompanying continued litigation, coupled with the analysis of Defendant's potential exposure and Defendant's defenses to certification and on the merits, and the risk that Defendants may also seek bankruptcy relief, lead Plaintiffs' counsel to reasonably conclude that a class-based settlement is in the proposed class's best interests. (*Id.* at ¶ 25).

Given the relatively small number of Participating Class Members - approximately 24 individuals - the individual settlement payments per class member will confer a substantial and meaningful benefit to the proposed class. Plaintiffs' counsel have reasonably concluded that the benefits of settlement and the risks of continued litigation outweigh the much more uncertain prospect of both winning and actually collecting a full recovery. (*Id.*)

### 4.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526

(C.D. Cal. 2004). Because the Settlement Class has been conditionally certified for settlement purposes only, the likely duration of further litigation might well be several years. Granting approval of the settlement, on the other hand, would create a common fund that would pay Participating Class Members substantial recoveries during the year following final approval.

While Defendant has agreed to settle the action, if this case were to proceed, Defendant would continue to assert a vigorous defense on liability and class certification. Therefore, while Plaintiffs believe the claims are meritorious and that the Class would be able to establish liability, Plaintiffs recognize the uncertainties of certification proceedings, trial and the risks inherent in establishing liability in a case of this nature.

Expert discovery and trial preparation would be expensive and relatively complex. While conceivably attainable, victory in such a trial is hardly assured. Even if Plaintiffs prevailed in establishing liability, additional risks would remain in establishing the amount of damages sustained by the Class. *See In re Veritas Software Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30880 at *14-15 (N.D. Cal. Nov. 15, 2005) (challenges in proving damages and other litigation risks supported approval of settlement).

By approving the Settlement, the Court can guarantee recovery for all Settlement Class members without having the class face the risk of certification proceedings, trial and a possible appeal. In addition, if this case were to proceed to certification proceedings and to trial, the Parties would have to expend hundreds of additional hours in attorney time, and spend much more in costs. Expenses incurred for a trial would severely deplete any eventual recovery.

Further, post-trial motions and appeals could force class members to wait many more years for any recovery, further reducing its value. Consequently, resolution of this case before trial will benefit the Settlement Class. Consistent

15

with the foregoing, it would be inefficient for 55 current and former employees to bring individual actions to recover from Defendant for its alleged labor law violations. Moreover, the potential recovery to each individual class member is likely not high enough to provide them with the incentive to sue individually. By granting final approval of the Settlement, the Court can eliminate all such risks and provide participating Settlement Class members with a certain recovery.

### 5. Risk of Maintaining a Class Action Through Trial and Appeal

Pursuing and maintaining a class action is an expensive and risky enterprise. In addition to the thousands of hours of time and money spent, with no hope of remuneration until and unless there is either a class settlement or a judgment, there is also the ever-present possibility that any victory attained by a plaintiffs can be overturned. *See, e.g., Fecht v. Northern Telecom Ltd. (In re Northern Telecom Ltd. Sec. Litig.)*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of litigation); *Robbins v. Koger Props, Inc*., 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and judgment entered for defendant); *Eisenstadt v. Centel Corp*., 113 F.3d 738 (7th Cir. 1997) (affirming the lower court's granting of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215 (10th Cir. 1996) (overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of a 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and a motion for judgment notwithstanding the verdict was denied; however, on appeal, the judgment was

reversed and the case dismissed — after 11 years of litigation); *Duran v. U.S. Bank N.A.*, 59 Cal. 4th 1 (2014) (class action case filed in 2001, certified in 2005, tried in 2007 and 2008, and $15 million judgment reversed and class decertified in 2014).

Notably, although the Class here has been preliminarily certified at this time for settlement purposes only, there is no assurance that it would ever be certified or would remain certified were the parties to actually litigate such proceedings. "A district court has a duty to assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1145 (8th Cir. 1999) (citing *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986)). Should this Court decline to finally approve the Settlement, Plaintiffs would first need to prevail upon their motion for class certification in order to obtain any class wide recovery of any kind, and Defendant would vigorously oppose certification.

Settlement at this time will avoid additional substantial costs, such as those that have already been incurred by both Parties, as well as avoid the delay and risks that would be presented by the further prosecution of this litigation. The instant settlement eliminates these risks.

## 6. Extent of Discovery Completed and the Stage of the Proceedings

As noted in this Court's Order granting preliminary approval, this factor looks at the evidence reviewed by Class Counsel in negotiating the settlement, and inquires whether Plaintiffs were capable of making an informed settlement decision. In reviewing this factor, it is clear that Plaintiffs conducted sufficient investigation of the various issues to warrant approval, as the Court noted in granting preliminary approval.

7.    **The Experience and Views of Counsel**

The Settlement is the product of arms-length negotiations conducted by capable counsel who are experienced in class action litigation, with the assistance of an experienced Magistrate Judge.

Having conducted extensive investigation and informal and formal discovery in this case and having assessed the risks of continued litigation, it is the view of Class Counsel that the settlement appropriately reflects the relative strengths of the parties' respective claims and defenses, as well as the substantial risk presented in continuing the litigation.  Such recommendations should be given a presumption of reasonableness.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 (the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to considerable weight").  Moreover, "[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976).

8.    **The Reaction of the Settlement Class Members to the Settlement**

"A favorable reception by the Class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *In re PaineWebber Ltd. Pships. Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Here, ***no one has opted out, and no one has objected.*** This demonstrates an overwhelmingly "favorable reception" by class members to the settlement.  In fact, "the absence of objectants [sic] may itself be taken as evidencing the fairness of a settlement." *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988); *see also In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (noting that two objections to settlement was very low); *Milstein v. Huck,* 600 F. Supp. 254, 267 (E.D.N.Y. 1984) (explaining that the reaction of the class was

18

"overwhelmingly favorable" because no objections to the settlement had been filed). This factor is satisfied and supports final approval of the settlement, to which no class member has objected.

## B.    INCENTIVE AWARDS, ATTORNEY'S FEES AND COSTS

### 1.    The proposed enhancement or incentive awards are reasonable and appropriate

Under the terms of the Settlement Agreement, Class Counsel apply for incentive awards to Named Plaintiffs Daniel Cisneros and Alberto Estrada of $2,500 each, for their efforts in bringing, prosecuting, and settling this case. Incentive payments serve to reward named plaintiffs for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation. "Courts routinely approve incentive rewards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca Cola Co.*, 200 F.R.D. 685, 694 (N.D. GA. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provide to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, the two Named Plaintiffs seek an incentive award of $2,500 each. This amount is justified based on the size of the gross settlement amount and the amount of time devoted by Named Plaintiffs to this case, which included cooperating with Plaintiffs' counsel in investigating the claims, making initial disclosures, providing declarations in support of the motion for conditional certification of the FLSA collective action, responding to discovery, and attending

and assisting with the settlement conference before Magistrate Judge Fouratt. (ECF#80, ¶ 27).  Moreover, the amount of incentive payment sought by Named Plaintiffs in this case is comparable to the amount of incentive payments awarded to named plaintiffs in other class action cases.

2.    **The proposed fee award is reasonable and appropriate**

The compensation sought for Plaintiffs' counsel is also fair and reasonable. Plaintiffs seek reimbursement of up to one-third, or $53,333.33 to cover all work performed and all fees incurred to date and to be incurred in connection with the approval by the Court of this Settlement, the administration of the Settlement, and obtaining final approval of this Settlement and entry of judgment.  This amount actually falls short of the lodestar amount of professional hours multiplied by reasonable market rates.  (Yen Dec. ¶¶ 16-20 and Exhibit C; *see O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F.Supp.3d 1050, 1085-1086 (D.N.M. 2021) regarding reasonable market rates for fees in civil litigation in New Mexico.)  Attorneys' fees in an amount up to one third of the gross settlement amount comports with the benchmark rate for common fund cases and falls well within the range of "reasonable" attorney's fees that are commonly awarded.  *See, e.g.*, *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) (rate of 33.3%); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492  (E.D. Cal. 2010) (rate of 33.3%); *Singer v. Becton Dickinson and Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (noting awards in class action cases where fees ranged from 30.3% to 40%).

3.    **The requested costs are reasonable and appropriate**

Litigation expenses are reimbursable as part of the award for attorney fees if they are the types of expenses that an attorney would include in a bill for professional services.  *Missouri v. Jenkins*, 491 U.S. 274, 285-289 (1989).  They include "reasonable out-of-pocket expenses" *Smith v. Diffee Ford-Lincoln-*

*Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002), travel, telephone and meal expenses, *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997), and expenses for computerized legal research. *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440 (7th Cir. 1994) (computerized legal research to be considered attorney's fee); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990) (expenses for computerized legal research akin to awards under attorney fee provisions).

The following expenses are the reasonable recoverable costs and out of pocket expenses incurred in the administration of class notice. These types of expenses would have been billed to a client paying on an hourly basis or under a retainer agreement, and would be categorized as costs under a contingent fee agreement. The minimal expenses claimed were reasonable and necessarily incurred as part of the litigation.

**COSTS** (Yen Dec. ¶ 21)

Filing fee, $400

Pro hac vice fee, $100

Service on EP Wrap-It, LLC, $109.23

Service on Luceros, $75

Postage for collective action notice and SASEs, $159

Paraprofessional 9.1 hours in administering class notice, $1,272.50

Postage for mailing and enclosed SASEs, 76 notice packets for 55 class members, some with multiple addresses, $92.72

Skip trace for three whose notices returned undeliverable, $885.00

**Total:** $3,093.45

**B.    FINAL CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE**

For the reasons set forth in in Plaintiffs' previously filed Motion for Preliminary Approval (ECF #79) and in this Court's Preliminary Approval Order (ECF #84), Plaintiffs respectfully submit that the proposed putative class satisfies the requirements of Fed. Civ. P. 23(b)(3) and the FLSA for purposes of settlement. The Court has preliminarily certified the putative class for settlement purposes in its Preliminary Approval Order.  Accordingly, Plaintiffs do not repeat that discussion here.  Final certification for settlement purposes is appropriate to allow the Participating Class Members to partake of the benefits of the Settlement, and should be granted, and to effectuate all the terms of the Settlement Agreement.

**C.    CLASS COUNSEL PROPOSES TO SUBMIT A FURTHER DECLARATION UPON COMPLETION OF ONE OUTSTANDING STEP OF THE NOTICE PROCESS, AT WHICH TIME THE FINAL APPROVAL ORDER SHOULD ISSUE**

As explained in the supporting Declaration filed herewith, paragraph 23, three of the initial notice packets returned undeliverable, and Plaintiffs' counsel had a vendor perform a skip-trace on the three addressees.  The vendor provided an address resulting from the skip-trace for each of those three individuals.  However, Plaintiff's counsel discovered in the course of preparing this motion that there is no record of sending the notice to the three skip-trace addresses.  Plaintiffs' counsel apologizes for this omission and assures the Court that otherwise, we completed the notice and claims procedure smoothly and timely.  Having notified Defendant's counsel, Plaintiffs' counsel proposes the following for the Court's approval:

1.    As soon as the Court approves, Plaintiffs' counsel will send the Notice Packet to the three skip-trace addresses.  The Notice will be in the same form as the Court previously approved, and the

deadlines for submitting a claim form, opt-out notice, or objection will be adjusted to 60 days after the date of mailing to the skip-trace addresses.

2.    Upon expiration of the 60 days after mailing to the skip-trace addresses, Plaintiffs' counsel will file a further declaration to confirm that the mailing was done and the time for claims, opt-out notices, and objections has expired, and provide an update regarding the responses, if any of those three addressees.

3.    After the further declaration described above is filed, we request the Court issue an Order Granting Final Approval of Class Action Settlement.

## IV.   **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Final Approval of the Class Action Settlement upon the filing of a further declaration by Plaintiffs' counsel regarding the completion of a final step of the notice process, as described above.

Respectfully submitted,

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

Dated:  December 30, 2021    By:  _____
ANNE I. YEN

Attorneys for Plaintiffs
*Pro Hac Vice*
courtnotices@unioncounsel.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December 2021, I efiled the foregoing document(s) using the court's CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Electronic Filing of:

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

JEFFREY T. LUCKY
DANIEL H. HERNANDEZ
RAY, McCHRISTIAN & JEANS, P.C.
A Professional Corporation
5822 Cromo Drive
El Paso, Texas 79912
Phone: (915) 832-7200
Fax: (915) 832-7333 Fax
Email: jlucky@rmjfirm.com
dhernandez@rmjfirm.com

(Attorneys for Defendants EP WRAP-IT INSULATION, LLC,
CYNTHIA LUCERO and ABRAM LUCERO)


By: _____
        HEIDI WEBB


147223\1232122

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 19-CV-500-GBW-GJF